UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| ERICA MOSBY, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | No. 10 C 8299 |
|  | ) |  |
| LIBERTY MUTUAL INSURANCE CO., | ) | Judge Rebecca R. Pallmeyer |
|  | ) |  |
| Defendant. | ) |  |

## MEMORANDUM ORDER

Plaintiff Erica Mosby was employed by Defendant Liberty Mutual Insurance Company as a Senior Customer Claims Representative prior to her termination on April 13, 2007. (EEOC Charge [Doc. 1-6].[1]) On December 30, 2010, she initiated this lawsuit by filing a five-page *pro se* complaint, together with more than 100 pages of exhibits. Defendant Liberty Mutual moved to dismiss that original complaint on a number of grounds [14], and Ms. Mosby responded by seeking leave to file an amended complaint [19]. She has also filed three motions for entry of a default order against Defendant [27, 33, 34]. For the reasons set forth here, Defendant's motion to dismiss is granted. The original complaint and amended complaint will be stricken, but Plaintiff will have leave to file a second amended complaint on certain of her claims. Defendant is not in default, and Plaintiff's motions for an order of default are denied.

**Plaintiff's Original Complaint**

Ms. Mosby's original complaint consists of a handwritten form complaint in which she has checked boxes for race discrimination and sex discrimination, and contends that Defendant terminated her and failed to promote her and that she was a victim of harassment and retaliation. [1-3.] The complaint is supported by a copy of a charge of discrimination that Ms. Mosby filed with

---

[1] References to the record are cited in brackets. Where docket entries have multiple pages, the specific page number is identified after the dash; thus, "1-6" is the sixth page of complaint, which is the first document filed.

EEOC on October 29, 2007. [1-7.] In that document, Plaintiff asserted that she was subjected to different terms and conditions of employment, harassment and discipline, and was discharged, on the basis of her race and in retaliation for "protected activity."

What follows the charge is a two-page memorandum describing Ms. Mosby's history with Liberty Mutual in a narrative. In this memo, evidently prepared on May 29, 2007, Ms. Mosby alleged that she is a "single black mother with two sons" who was employed by Liberty Mutual for eight years, beginning in 1999. [1-8.] She alleges that she was assigned to work in Naperville, Illinois, beginning in August 2006, and took a leave to care for one of her sons early on, but was nevertheless able to complete her training. Shortly after Plaintiff received a favorable performance evaluation and a bonus, the department in which she was working was restructured, and she was assigned to a new supervisor and manager. In February 2007, Ms. Mosby attended a four-day training and, when she returned, was "written up." On Friday, April 13, 2007, less than two months after being assigned to a new supervisor, Plaintiff was fired. She alleges, "I was fired for unfounded abuse of Aux Codes and phone usage. There is no evidence of this." Ms. Mosby's conclusion, set forth in the first paragraph of her memo, is that "Interference Retaliation of Family Medical Leave Act and Race Discrimination, were the reasons I was terminated from my job of approximately 8 years."

Rule 8 of the Federal Rules of Civil Procedure requires a plaintiff to set forth "a short and plain statement of the claim showing that [she] is entitled to relief." The court will assume that Ms. Mosby's original complaint, together with the May 29, 2007 memorandum, are sufficient to state claims that she suffered race discrimination and retaliation. (That conclusion is not free from doubt; Ms. Mosby has not explained how her August 2006 leave influenced the decision made by new managers to terminate her eight months later, nor has she explained why unfounded accusations regarding use of "Aux Codes" and the telephone reflected race discrimination.) She has also submitted a host of additional documents describing her claims in various ways. In a document

titled "Summary of Evidence," she alleges that the computer and telephone system assigned to her did not work properly [1-19, 1-20, 1-22; 1-97; 1-99] and that, in addition to the leave she took for her son's injuries, she requested leave in March 19, 2007, for her own illness. [1-23, 1-127.] She asserts that she was denied a promotion in 2005 [1-23] but accepted a position in Naperville "that was set-up by Liberty Listens." [1-24; 1-79.] (Although Ms. Mosby has not explained this, the court understands that "Liberty Listens" is a program established by Defendant to facilitate communication between its employees and "Corporate Employee Relations." [1-86.] Following a restructuring, Ms. Mosby was the only person in her job assignment who was required to meet a quota. [1-24; 1-80; 1-110.] She was subjected to a an "uncomfortable close seating arrangement with Black male supervisor," amounting to a hostile work environment. [1-24; 1-110.]

Also attached to the original complaint are several other documents that may ultimately constitute evidence, including pages describing the functioning of computer and telephone equipment [1-27 through 1-35]; copies of e-mail messages and memoranda that Ms. Mosby exchanged with her managers and other workers [1-36 through 1-47; 1-56 through 1-78; 1-81 through 1-85; 1-91 through 1-95; 1-98; 1-102 through 1-108; 1-111 through 1-120; 1-125; 1-128 through 1-130]; Ms. Mosby's December 2005 performance evaluation [1-49 through 1-55]; a document titled "TIMELINE" [1-79 to 1-80; 1-127]; copies of communications between Ms. Mosby and Defendant's "compliance helpline" [1-87 through 1-90]; a description of Defendant's compensation policies [1-121 to 1-122]; work performance records for Ms. Mosby and others [1-123 to 1-124]; and records concerning Ms. Mosby's illness in April 2007 [1-131 through 140].

**Defendant's Motion to Dismiss**

Defendant Liberty Mutual moved to dismiss Plaintiff's original complaint or, in the alternative, for an order requiring Plaintiff to make a more definite statement of her claim for relief [14]. In a memorandum in support of that motion [15], Defendant argued (1) that any claims under the Family and Medical Leave Act are time-barred; (2) that Plaintiff's sex discrimination and failure-to-promote

3

claims must be dismissed because they were not included in Plaintiff's charge; (3) that any claims arising from events more than 300 days before the filing of Plaintiff's charge must be dismissed; (4) that Plaintiff's form complaint is insufficient under modern pleading standards; and (5) that Plaintiff's 144-page submission is "impossible to navigate."  Plaintiff responded to these arguments with a memorandum [19] in which she also asked leave to file an amended complaint.

> **A.    FMLA Claim**

Ms. Mosby's memorandum appears to concede that her FMLA claims are time-barred [19-8], and the court agrees.  The Family Medical Leave Act has a three-year statute of limitations for willful violations of the Act and a two-year statute of limitations for any violations that are not willful. 29 U.S.C. § 2617(c).  Construing her allegations favorably, Ms. Mosby has alleged that Defendant terminated her in retaliation for her requests for leave.  That termination occurred in April 2007, so even assuming that Defendant's FMLA violation was willful, the time for filing this lawsuit expired well before December 2010, when this lawsuit was filed.  Plaintiff faults the EEOC for the slow pace of its investigation of her employment discrimination claims. The court agrees with her that the delay is regrettable, but Defendant was not responsible for it.  The FMLA claims are dismissed.

> **B.    Sex Discrimination Claim and Failure to Promote**

Plaintiff objects to the dismissal of her sex discrimination claim.  She argues that Defendant misinterpreted that claim.  According to Plaintiff, she suffered discrimination as a result of her "status as a single mother, social class . . . [n]ot as sex discrimination within the context of men." Plaintiff notes, specifically, the hostile environment that resulted when she was seated too closely to her "Black male Supervisor." [19-8.]  She claims, further that her manager, Joan Skinner, a white woman, "showed disrespect to Plaintiff because she is a single black mother" and that Kevin McLoughlin "wrote bogus warnings without any provocation."

As a general rule, a plaintiff may present, in a federal complaint, only those claims that were first presented in her underlying charge of discrimination.  See *Cheek v. Western and Southern Life*

4

*Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). As described above, Ms. Mosby's underlying charge of discrimination, filed on October 29, 2007, alleged that she was subjected to different terms and conditions of employment, harassment and discipline, and was discharged, on the basis of her race and in retaliation for "protected activity." Her claim that she was subjected to a seating arrangement that created a hostile environment based on her sex does not appear to be like, or reasonably related to, the charges she presented to the EEOC. In any event, from the court's review of the voluminous materials Ms. Mosby has submitted, it appears that her difficulties with seating and with Ms. Skinner's supervision all date from the spring of 2006–well more than 300 days before the filing of her charge of discrimination. [*See* 1-111, 1-115, 1-119, 1-120.]

To the extent that Mr. McLoughlin imposed unfair discipline, such a claim may be actionable if Plaintiff can show that Mr. McLoughlin treated her differently on the basis of her race, or in retaliation for her complaints of discrimination. Indeed, Defendant's alleged refusal to grant FMLA leave to Plaintiff in April 2007 may be actionable if she can show that this refusal was based on her race. Similarly, Ms. Mosby's failure-to-promote claim was not specifically mentioned in her charge of discrimination, but she may nevertheless be permitted to proceed on this claim, if it constitutes an example of different terms and conditions of employment imposed on her on the basis of race. (If the failure to promote claim rests only on events of 2005, however, it will be dismissed on timeliness grounds, a matter addressed below.) The sex discrimination claims are otherwise dismissed.

  **C.**  **Claims Arising More than 300 Days before October 29, 2007**

Defendant has argued that any claim that arose more than 300 days before Ms. Mosby has filed her charge must be dismissed. In response, Plaintiff correctly cites *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), which sets out the governing principles of law: to the extent that she seeks to recover for discrete acts of discrimination, only those acts that occurred within 300 days of the filing of her charge are actionable under Title VII. Plaintiff may,

however, recover under a hostile work environment theory for acts that occurred earlier, so long as they were part of the same hostile work environment and at least one of those acts occurred within the 300-day period.

Plaintiff has alleged that she was subject to unfair terms and conditions of employment and to a hostile work environment. She may pursue that claim so long as she can show that the conditions continued into the relevant 300-day period. Any claims arising from discrete acts--denial of a specific promotional opportunity, for example–may be part of her lawsuit only if those acts occurred on or after December 31, 2007. Any claim arising from Defendant's failure to promote her in 2005 will be dismissed.

### D. Form of Plaintiff's Complaint

Defendant's challenges to the form of Plaintiff's complaint are well taken. As noted earlier, Rule 8 directs a party bringing claim to present a "short and plain statement" of her claim for relief. The complaint need not (and should not) be lengthy, so long as it provides the defendant with "fair notice of the claim and its basis," *Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011) and offers more than mere labels or conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In addition, the complaint must have "facial plausibility"; that is, it must present "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, ___, 129 S.Ct. 1937, 1949 (2009).

Neither Plaintiff's original 144-page submission nor her more recent amended complaint [22] meets these standards. The original form complaint presents nothing but conclusions. It is supported by more than 100 pages of "evidence," but Defendant ought not required to wander through those document in order to determine the nature or timing of Plaintiff's claims. The amended complaint is only a bit better; it does include a few numbered paragraphs [22-7 through 22-9], but those paragraphs contain few specifics and are surrounded by lengthy legal arguments. Factual material appears in other locations, as well [22-16; 22-18], but Defendant cannot respond

effectively to lengthy narrative descriptions of the facts that appear in various locations within the complaint.

A proper complaint would set forth Plaintiff's claims in short numbered paragraphs, stating, in a non-argumentative fashion, (a) which manager(s) discriminated against Plaintiff; (b) the precise nature of the discrimination (for example, the conditions imposed, or privileges denied, to Plaintiff on the basis of her race); and (c) precisely when the wrongdoing occurred. With respect to Plaintiff's claim of retaliation, the complaint should identify (a) the nature of the protected activity (for example, if her communication with Liberty Listens included a complaint of discrimination, she should so state); (b) the person(s) who were aware of her protected activity; and (c) how and when those persons retaliated against her. Because the pleadings, in their current form, do not meet these standards, the original complaint and amended complaint are stricken without prejudice.

**Motions for Default**

Plaintiff has asked that the court enter a default order. Default is appropriate, however, only where the defendant has "failed to plead or otherwise defend" the lawsuit. FED. R. CIV. P. 55(a). Defendant Liberty Mutual was served with the complaint in this case on February 14, 2011. Just nine days later, Defendant appeared through counsel and, after seeking a brief extension of time [9] filed a timely and thoughtful motion to dismiss [14]. In short, Liberty Mutual has never been in default. The motions for entry of default will be denied.

### CONCLUSION

Defendant's motion to dismiss the original complaint [14] is granted. Plaintiff's motion for leave to amend [19] is also granted, but both the original complaint and the first amended complaint are stricken without prejudice. Plaintiff's motions for entry of default [27, 33, 34] are denied.

Plaintiff has leave to file a second amended complaint within 28 days, consisting of short, numbered paragraphs, as described above. Plaintiff is cautioned that neither legal arguments nor

evidentiary material should be part of the complaint, and that a copy of everything she submits to the court must be furnished to counsel for Defendant. Plaintiff is encouraged to seek counsel to represent her or, should she choose to proceed on her own, to seek assistance from the court's Pro Se Help Desk. A status conference is set for February 16, 2012, at 9:00 a.m.

ENTER:

Dated: January 17, 2012

*/s/ Rebecca R. Pallmeyer*

REBECCA R. PALLMEYER
United States District Judge